UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLENE HOPKINS, Individually, as Wrongful Death Heir, and as Successor-in-Interest to NORMAN HOPKINS, JR., Deceased; and MICHELLE HOPKINS, and MICHAEL HOPKINS, as Legal Heirs of NORMAN HOPKINS, Deceased, and THE FLINTKOTE COMPANY, THE OFFICIAL COMMITTEE OF CLAIMANTS, and JAMES J. MCMONAGLE as the LEGAL REPRESENTATIVE FOR FUTURE ASBESTOS PERSONAL INJURY CLAIMANTS,<br><br>Plaintiffs,<br><br>v.<br><br>PLANT INSULATION COMPANY; UNIROYAL HOLDING, INC.; IMPERIAL TOBACCO CANADA LIMITED; SULLIVAN & CROMWELL LLP; and DOES 1 through 100,<br><br>Defendants.<br>_____/ | No. C 06-03051 MHP<br><br>**MEMORANDUM & ORDER**<br>Re: Motion to Remand, Motion to Transfer, Motion to Stay |

    Individual plaintiffs Marlene Hopkins et al. (the "Hopkins plaintiffs") and plaintiffs The Flintkote Company and its bankruptcy representatives (collectively, "Flintkote") filed this lawsuit in Superior Court for the City and County of San Francisco against defendants Plant Insulation Co. et al., seeking compensation for the alleged wrongful death of Norman Hopkins from Mesothelioma—a disease commonly associated with exposure to asbestos—as well as other remedies generally related to Flintkote's manufacture and sale of asbestos and asbestos products. Defendants Imperial Tobacco Canada LTD. ("Imperial Tobacco") and Sullivan & Cromwell LLP ("S&C") timely removed the lawsuit to federal court. Now before the court are plaintiffs' motion to remand, defendants' motion to transfer to the District of Delaware, and defendants' motion to stay

the litigation. Having considered the parties' submissions and arguments, the court enters the following memorandum and order.

BACKGROUND[1]

The plaintiffs in this lawsuit fall into two groups whose claims are largely distinct, both factually and legally. The Hopkins plaintiffs are the heirs and successors in interest to Norman Hopkins, Jr., who died in 2005, allegedly as a result of exposure to asbestos fibers. First Amended Complaint ("FAC") ¶¶ 48, 52–55. The Hopkins plaintiffs previously sued The Flintkote Company (a plaintiff in this action) in state court for asbestos-related personal injuries. The state court action settled on June 25, 2003, prior to the death of Norman Hopkins, and was reduced to judgment. Id. ¶ 64. The claims brought by the Hopkins plaintiffs in this lawsuit seek additional recovery from defendants Plant, Uniroyal and Imperial Tobacco in connection with Mr. Hopkins's subsequent death.

Plaintiff The Flintkote Company formerly mined and sold asbestos and asbestos-related products. Id. ¶ 11. Beginning in the 1980s, Flintkote became the defendant in a number of lawsuits alleging damages arising from asbestos exposure. In 1986, defendant Imperial Tobacco acquired Flintkote's parent company, Genstar Corp. Id. ¶ 17. Imperial Tobacco then sold Flintkote's operating assets to third parties and arranged for Flintkote to transfer much of the resulting cash to Imperial Tobacco, leaving Flintkote with roughly 80 million dollars to cover the cost of future asbestos-related expenses. Id. ¶ 19.

The number of asbestos-related claims against Flintkote increased dramatically, forcing Flintkote to seek bankruptcy protection in 2004. The bankruptcy case is currently pending in the District of Delaware. Flintkote, along with its bankruptcy trustees, has subsequently begun to pursue litigation in order to obtain funds with which to compensate the many asbestos claimants. This lawsuit is part of that effort; Flintkote brings several claims alleging that Imperial Tobacco fraudulently took possession of the cash from the sale of Flintkote's assets, deliberately leaving insufficient capital to cover Flintkote's asbestos-related expenses.

The claims in this lawsuit, which include the claims of the Hopkins plaintiffs as well as claims brought by Flintkote, can be divided into four groups. In the first group, consisting of claim one (as applied to Plant and Uniroyal) and claims two through seven, the Hopkins plaintiffs seek recovery from Plant and Uniroyal on various state law tort theories, including negligence and products liability. In the second group, consisting of claim one (as applied to Imperial Tobacco) and claim eight, both the Hopkins plaintiffs and Flintkote seek to impose alter ego liability on Imperial Tobacco for asbestos-related claims brought against Flintkote. In the third group, consisting of claims nine through twelve and fourteen through sixteen, Flintkote seeks to recover the proceeds from the sale of Flintkote's assets from Imperial Tobacco on various state law theories, including breach of fiduciary duty and fraudulent conveyance. Of particular note is claim eleven, for recovery of fraudulent transfers. Id. ¶¶ 130–35. Flintkote's standing to bring claim eleven on behalf of its creditors is provided by a federal statute, 11 U.S.C. section 544(b), which provides in relevant part that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor . . . ." Finally, in claim thirteen Flintkote seeks to recover from S&C based on S&C's role in overseeing the sale of Flintkote's assets and the payment of dividends to Imperial Tobacco.

The procedural history of this lawsuit is complex and involves motions and rulings in both California and Delaware. Flintkote and the Hopkins plaintiffs filed the instant action in California state court on April 5, 2006. Flintkote simultaneously petitioned the Delaware Bankruptcy Court for approval of a joint prosecution agreement and a lift of the automatic bankruptcy stay in order to allow this litigation to proceed. The Bankruptcy Court granted Flintkote's request. The Bankruptcy Court also approved Flintkote's plan to have both Flintkote and the Hopkins plaintiffs simultaneously pursue alter ego claims against Imperial Tobacco, based on Flintkote's argument that under California law it is unclear which party has standing to assert the alter ego claim.

Imperial Tobacco and S&C timely removed the lawsuit to this court on May 5, 2005. Defendants Plant and Uniroyal did not join in the removal. Imperial Tobacco and S&C then filed a motion in the Delaware District Court to transfer the action to Delaware under 28 U.S.C. section

3

157(b)(5). The same two defendants also filed a motion in this court to transfer the action to Delaware.[2] Plaintiffs filed a motion in this court to remand the lawsuit to state court.

On June 13, 2006 the Delaware District Court issued an order in which it abstained from exercising jurisdiction over this action under section 157(b)(5). Hopkins v. Plant Insulation Co., 342 B.R. 703 (D. Del. 2006). The Delaware court concluded that this lawsuit is not an integral part of Flintkote's bankruptcy proceedings, that Flintkote's choice of forum deserves deference, and that California is an appropriate forum for litigation due to the preponderance of state law claims and the ability of California courts to resolve questions of California or Delaware law.

In light of the Delaware court's decision to abstain from ruling on the proper forum for this lawsuit, this court must now consider whether this lawsuit should proceed in federal court and, if so, whether it should proceed in California or in Delaware.

DISCUSSION

I.   Jurisdiction

The notice of removal asserts two bases for pursuing this lawsuit in federal court. First, defendants removed under 28 U.S.C. 1452(a). Section 1452(a) permits removal based on the presence of claims falling under 28 U.S.C. section 1334(b), which provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Plaintiffs do not dispute that the claims in this lawsuit are related to the Delaware bankruptcy proceedings, but argue that this court should exercise its discretion to remand the lawsuit, as provided in section 1452(b). Given that jurisdiction is not in dispute, the court is able to consider the merits of the parties' arguments in support of transfer and remand.

Defendants also removed under section 1441, based on federal question jurisdiction as set forth in section 1331. The court considers the applicability and effect of sections 1331 and 1441 below.

4

1  II.     Mandatory Federal Jurisdiction

2          Defendants argue that federal jurisdiction is mandatory in this lawsuit for two reasons. First,
3  defendants argue that Flintkote's fraudulent conveyance claim under 11 U.S.C. section 544(b) is a
4  "core" bankruptcy matter, within the exclusive jurisdiction of the federal courts. Second, defendants
5  argue that the section 544(b) claim is a federal question, which provides the basis for removal as of
6  right under 28 U.S.C. sections 1331 and 1441. The court considers each argument in turn.

8          a.      Jurisdiction over Core Bankruptcy Proceedings

9          In arguing that Flintkote's section 544(b) claim is subject to exclusive federal jurisdiction,
10 defendants rely primarily on In re Gruntz, 202 F.3d 1074 (9th Cir. 2000) (en banc). In Gruntz, a Los
11 Angeles District Attorney filed a misdemeanor criminal complaint alleging that Gruntz failed to
12 make support payments to his former spouse. At the time the complaint was filed, Gruntz was in the
13 midst of bankruptcy proceedings. Id. at 1077. Gruntz was convicted, and he subsequently
14 petitioned the bankruptcy court to enjoin the sentencing on the grounds that the state criminal
15 prosecution was in violation of the automatic stay imposed under 11 U.S.C. section 362. Id. The
16 bankruptcy court declined to do so, concluding that it was collaterally estopped by the state court
17 judgment against Gruntz or barred by the Rooker-Feldman doctrine from reversing that judgment.
18 Id.

19         The Ninth Circuit, sitting en banc, disagreed, concluding that only the bankruptcy court had
20 authority to overrule the automatic stay. Although the language of the Ninth Circuit's opinion is at
21 times sweeping, several points in the court's reasoning bear careful scrutiny. The court began by
22 noting that Rooker-Feldman abstention is rooted in a negative inference drawn from statutes
23 establishing the subject matter jurisdiction of the federal courts rather than in the constitution. Id. at
24 1078. The court then noted that certain categories of federal actions—such as petitions for habeas
25 corpus—fall outside of the Rooker-Feldman framework. Id. at 1079. Like federal habeas law,
26 federal bankruptcy law creates exceptions to the general rule of federal deference to state court

5

judgments by empowering bankruptcy courts to avoid or modify state judgments. Id. For certain bankruptcy-related questions, the bankruptcy court's power is plenary.

In order to determine the scope of the bankruptcy court's plenary power, the Ninth Circuit looked to two statutes: the bankruptcy jurisdictional statute, 28 U.S.C. section 1334, and the statute defining "core" bankruptcy proceedings, 28 U.S.C. section 157(b). Under section 1334, federal district courts have "original and exclusive jurisdiction over all cases under title 11." § 1334(a). The court found that under the plain language of this statute, bankruptcy "cases" may only be heard in federal court.

For proceedings enumerated in section 157(b), including actions to avoid fraudulent conveyances, bankruptcy courts also enjoy a certain type of plenary power in that they "may hear and decide" the proceedings without being subject to review by an Article III court. Id. at 1081. In contrast, with respect to non-core proceedings, "bankruptcy judges may only propose findings of fact and conclusions of law to federal district courts." Id. It is important to note that the grant of plenary power to bankruptcy judges under section 157(b) is permissive rather than mandatory:

> Bankruptcy judges *may hear and determine* all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C. § 157(b) (emphasis added). The statute does not *require* that bankruptcy judges hear core proceedings, but it grants them the power to do so if they choose.

The Ninth Circuit found that orders modifying or annulling the automatic stay fall under both of the grants of plenary power: "Central to the bankruptcy 'case' as to which exclusive Article I federal jurisdiction lies is the automatic stay imposed by 11 U.S.C. § 362(a). Congress has declared that actions to 'terminate, annul, or modify' the automatic stay are core bankruptcy proceedings." Gruntz, 202 F.3d at 1081. The court further noted that "[t]he automatic stay is self-executing." Id. Thus any state court action in derogation of the stay would be a direct violation of a federal court order, which constitutes an impermissible state court restraint on federal court proceedings. Id. at 1082. In conclusion, the Ninth Circuit stated that "[a] bankruptcy court simply does not conduct an

6

improper appellate review of a state court when it enforces an automatic stay that issues from its own federal statutory authority." Id. at 1083.

Defendants argue that Gruntz stands for the broad rule that only federal courts have jurisdiction to adjudicate core bankruptcy proceedings. As a result, according to defendants, Flintkote's section 544(b) claim must be heard in federal court. The holding in Gruntz, however is not so broad and does not apply to the section 544(b) claim in this case for several reasons.

First, as the parties do not dispute, the section 544(b) claim is not part of the "case" over which federal courts have exclusive jurisdiction under 28 U.S.C. section 1334(a). Rather, the parties argue that the section 544(b) claim "aris[es] under" title 11 or is "related to" Flintkote's bankruptcy case. To the extent that Gruntz relied on section 1334(a) in finding that the state court lacked jurisdiction, it is therefore inapplicable.

Second, unlike in Gruntz, the state court in this case was not acting in derogation of any bankruptcy court order. To the contrary, both the Delaware Bankruptcy Court and the Delaware District Court have expressly held that Flintkote's claims—including the section 544(b) claim—may proceed in California State Court. This distinction is crucial because, as noted above, the plenary power established by section 157(b) is permissive. In Gruntz, where the bankruptcy court had acted (although implicitly) in issuing the automatic stay, the state court was without power to review or disagree with that action. Here, in contrast, the Bankruptcy Court expressly refrained from acting on the section 544(b) claim, leaving the adjudication of the claim to the state court. Nothing in Gruntz indicates that a bankruptcy court lacks the power to decline jurisdiction over core matters.

Third, defendants' argument that section 157(b) permits Federal District Courts to adjudicate core bankruptcy proceedings while depriving state courts of that right is impossible to reconcile with the text of the statute. Section 157(b) governs the division of responsibility between Article III district courts and Article I bankruptcy courts in each judicial district, and has nothing to say about the division of responsibility between state and federal courts. The statute governing that division is section 1334, which provides that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28

7

U.S.C. § 1334(b). Under this statute, as the court in Gruntz noted, federal courts are given authority to adjudicate bankruptcy-related claims which otherwise could only be heard in state court. See Gruntz, 202 F.3d at 1083 ("the purpose of this section is not to create jurisdiction in non-bankruptcy courts, but to allow district courts in which the bankruptcy case is filed to adjudicate bankruptcy-related actions in which jurisdiction has been vested in other courts.").

In addition to portions of the Gruntz opinion already discussed, supra, defendants argue that the following passage suggests that federal courts have exclusive jurisdiction over all core bankruptcy proceedings:

> Because of the bankruptcy court's plenary power over core proceedings, the County's argument that states have concurrent jurisdiction over the automatic stay under 28 U.S.C. § 1334(b) is unavailing. That section provides that the district courts "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to a case under title 11." Of course, nothing in that section vests the *states* with any jurisdiction over a core bankruptcy proceeding, including "motions to terminate, annul, or modify the automatic stay." 28 U.S.C. § 157(b)(2)(G). The only grant of jurisdiction to do so involves the exercise of federal bankruptcy power. Indeed, the purpose of this section is not to create jurisdiction in non-bankruptcy courts, but to allow district courts in which the bankruptcy case is filed to adjudicate bankruptcy-related actions in which jurisdiction has been vested in other courts.

Gruntz, 202 F.3d at 1082–83 (emphasis in original). Taken in context, this passage explains only that section 1334(b) does not grant state courts authority to overrule the order of a federal court. With respect to the section 544(b) claim in this lawsuit, there is no federal order to overrule. It is therefore not necessary that any federal statute vest the state court with jurisdiction to act; state courts presumptively have unlimited jurisdiction, subject only to restrictions permitted by Article I. Nothing in the language of section 1334 suggests that state courts have been stripped of jurisdiction over core matters.

In sum, the most that can be said based on Gruntz is that if the Bankruptcy Court in this case had decided to adjudicate Flintkote's section 544(b) claim, neither this court nor any state court would have the authority to take actions to the contrary. The Bankruptcy Court, however, opted not to hear the claim, and Gruntz provides no basis for compelling the Bankruptcy Court to revisit that decision.[3]

8

The court therefore concludes that state courts retain concurrent jurisdiction over claims brought pursuant to 11 U.S.C. section 544(b).

   b.  Federal Question Jurisdiction

Defendants also argue that they are entitled to removal because the section 544(b) claim is a federal question. According to defendants, the section 544(b) claim establishes federal jurisdiction under 28 U.S.C. section 1331 and is removable under section 1441 without being subject to discretionary remand. Plaintiffs counter that the general removal and remand statutes are not controlling because remand of claims arising under the bankruptcy code is governed by section 1452.

Although the parties have not cited (nor has the court found) any Ninth Circuit authority directly considering this question, the court agrees with plaintiffs that discretionary remand under section 1452 is available in this case. The parties improperly frame their dispute as a choice between which law the court should follow in evaluating removal and remand—the bankruptcy-specific law as set forth in sections 1334 and 1452, or the general removal and remand statutes, including sections 1331, 1441 and 1447. The Supreme Court has repeatedly advised, however, that effect should be given to both bankruptcy-specific and general jurisdictional laws when it is possible to do so. Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253 (1992) (finding that the statute governing appellate jurisdiction for bankruptcy cases does not preclude interlocutory appeals under 28 U.S.C. section 1292, because "so long as there is no 'positive repugnancy' between two laws, . . . a court must give effect to both."); Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 129 (1995) (finding that "there is no reason §§ 1447(d) and 1452 cannot comfortably coexist in the bankruptcy context. We must, therefore, give effect to both.").

Here, as well, there is no difficulty posed by simultaneously applying sections 1441, 1447 and 1452. Assuming for the sake of argument that a section 544(b) claim "aris[es] under" federal law, the body of federal law under which the claim arises is title 11. Section 1452, in addition to section 1441, provides the district court with removal jurisdiction over claims arising under title 11:

9

"A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). Section 1334(b), as discussed supra, provides for original jurisdiction over claims "arising under title 11."

Section 1452(b) also provides authority to the district court to remand claims arising under title 11 to state court on any equitable grounds: "The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). The phrasing of this statute merits close scrutiny. Any court to which a bankruptcy-related claim "is removed" may remand the claim on equitable grounds. The statute does not limit itself to claims removed solely under section 1452(a). Thus under the plain meaning of the statute, claims removed under section 1441, over which the district court also has removal jurisdiction under sections 1452(a) and 1334, may be remanded on equitable grounds.

Nothing in section 1447 or any other general removal statute expressly precludes remand on equitable grounds. Cases cited by defendants holding that removal under section 1441 is as of right, and not subject to discretionary remand, based their rulings on the lack of statutory authority for discretionary remand and did not consider the effect of section 1452(b). See, e.g., Brockman v. Merabank, 40 F.3d 1013, 1017 (9th Cir. 1994) (reversing district court's decision to remand because the district court lacked "statutory authority" to decline to hear the case). Section 1452(b) provides the requisite statutory authority.

Indeed, one of the cases cited by the parties found that the court had jurisdiction under section 1331 but proceeded to engage in equitable remand analysis under section 1334(b). Rahl v. Bande, 316 B.R. 127, 137 (S.D.N.Y. 2004) ("this court has jurisdiction over Count IV of the Complaint pursuant to 28 U.S.C. § 1331 because it involves a federal question and we have supplemental jurisdiction over the remaining claims."). Although the Rahl court ultimately retained jurisdiction, it did so based on a weighing of the discretionary factors. Id. at 138.

10

Having concluded that bankruptcy-related claims are subject to equitable remand regardless of whether they were removed under section 1441 as well as under section 1452, the court turns to the merits of plaintiffs' arguments in support of remand.

III.     Discretionary Remand

Section 1452(b) provides that "[t]he court to which [a claim or cause of action falling under section 1334(b)] is removed may remand such claim or cause of action on any equitable ground." Courts have typically identified seven factors governing the decision to remand: (1) the effect of the action on the administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty of applicable state law; (4) comity; (5) the relatedness of the action to the bankruptcy case; (6) any jury trial right; and (7) prejudice to plaintiffs from removal. Williams v. Shell Oil Co., 169 B.R. 684, 692–93 (S.D. Cal. 1994).

As courts have noted, the factors governing discretionary remand are substantially the same as the factors governing abstention. In re Diversified Contract Servs., Inc., 167 B.R. 591, 596 (Bankr. N.D. Cal. 1994). The Delaware District Court considered many of the preceding factors in deciding to abstain from assigning the action under 28 U.S.C. section 157(b), as well as certain additional factors often considered in abstention cases. See Hopkins, 342 B.R. at 711.

The Delaware District Court has already engaged in a lengthy analysis of the remand / abstention factors and concluded that California State Court was an appropriate forum for the litigation, given the bankruptcy trustees' clear preference and the overwhelming predominance of state law questions. The Delaware Bankruptcy Court has also approved plaintiffs' decision to bring this lawsuit in state court. This court sees no reason to disturb the carefully considered findings of two Delaware courts, and hereby adopts them. Plaintiffs' motion to remand is therefore granted.

CONCLUSION

Plaintiffs' motion to remand is GRANTED. A certified copy of this order shall be sent to the Superior Court for the County of San Francisco, and the clerk shall close the file.

IT IS SO ORDERED.

Dated: July 27, 2006

MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

12

# **ENDNOTES**

1. Unless otherwise specified, background facts are taken from plaintiffs' First Amended Complaint and are deemed to be true for purposes of the instant motions only.

2. Defendants also filed a motion to stay this action pending a ruling by the Delaware District Court on the motion to transfer. The Delaware District Court ruled on defendants' motion on June 13, 2006, rendering the motion to stay moot. The court discusses the effect of the Delaware court's ruling infra.

3. Similarly, the Ninth Circuit Bankruptcy Appellate Panel in In re Birting Fisheries, Inc., 300 B.R. 489 (9th Cir. BAP 2003) held that a state court lacks jurisdiction to interpret the terms of a confirmed bankruptcy plan. Id. at 501. In Birting Fisheries, as in Gruntz, the challenged state court ruling conflicted with an actual order of a federal court. Here, in contrast, the state court would be acting in compliance with the bankruptcy court's order by adjudicating Flintkote's section 544(b) claim. The Birting Fisheries court also qualified its holding by stating that bankruptcy courts would lack the authority to overturn state court decisions involving only state contract law. Id. Here, Flintkote's section 544(b) claim involves application of state fraudulent conveyance law.